UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KRISTIN CORDERO,<br><br>               Plaintiff,<br><br>v.<br><br>AMERICA'S WHOLESALE LENDER AKA COUNTRYWIDE HOME LOANS INC. AKA BAC HOME LOAN SERVICING INC. LP AKA BANK OF AMERICA HOME LOANS, N.A.; FIDELITY NATIONAL TITLE INSURANCE CO.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. (MERS); RECONTRUST COMPANY, N.A.; FANNIE MAE/FREDDIE MAC; John and Jane Does, 1-thru-20, individuals working for above Defendants; Unknown Business 1-thru Entities 20,<br><br>               Defendants. | Case No. 1:12-cv-00099-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it two motions to dismiss, the first filed on March 14, 2012,

by Defendant Fidelity National Title Insurance Company ("Fidelity") and the second

filed on March 15, 2012, by Defendants Bank of America, N.A., MERS, ReconTrust,

**MEMORANDUM DECISION AND ORDER - 1**

Fannie Mae and Freddie Mac (collectively, the "Bank Defendants").[1] Accompanying Fidelity's motion was a motion for judicial notice. (Dkt. 9.) Plaintiff Kristin Cordero, who is appearing pro se in this matter, did not file a response to the motions.[2] On July 17, 2012, well after the April 9, 2012, response deadline, Cordero filed a Notice of Intent to File Response, (Dkt. 18), indicating she intended to respond and would do so in the future. The Court, however, denied Cordero's request. (Dkt. 21.)

The motions are ripe for the Court's consideration. Having reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and the record. For the reasons discussed below, the Court will grant Defendants' motions to dismiss and the motion to take judicial notice.[3]

## FACTS[4]

On March 8, 2006, Plaintiff Kristin Cordero ("Cordero") and Joaquin Cordero borrowed $256,000 from America's Wholesale Lender to purchase a residence located at 4515 N. Chelmsford Avenue, in Boise, Idaho (the "Property"). The Loan was evidenced by a promissory note (the "Note") in the principal amount of $256,000. To secure

---

[1] The Bank Defendants are described as Bank of America, N.A., successor in interest by merger to BAC Home Loan Servicing, LP, f/k/a, Countrywide Home Loans Servicing, LP, incorrectly named as America's Wholesale Lender aka Countrywide Home Loans, Inc., aka BAC Home Loan Servicing Inc. LP aka Bank of America Home Loans N.A. ("BANA"), ReconTrust Company, N.A. ("ReconTrust"), Mortgage Electronic Registration Systems, Inc. ("MERS") and Federal National Mortgage Association, incorrectly named as Fannie Mae/Freddie Mac ("Fannie Mae"). The Bank Defendants clarified that the naming of Freddie Mac appears to be in error. However, the error is of no consequence to this decision.

[2] Although Cordero did not file a response to Defendants' motions to dismiss, which the court may consider as consent to granting the motions, the Court has reviewed the complaint and considered the motions on their merits.

[3] All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this matter pursuant to 28 U.S.C. § 636. (Dkt. 14.)

[4] The following facts are taken from the Complaint (Dkt. 1) and attached exhibits, and documents of public record attached to Defendants' Motions to Dismiss and Motion for Judicial Notice, of which the Court takes judicial notice. The Court may consider materials attached to the Complaint, or incorporated by reference, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The records of state agencies and other undisputed matters of public record are proper records for judicial notice. *Burton v. Countrywide Bank, FSB*, 2012 WL 976151 (D. Idaho Mar. 1, 2012).

**MEMORANDUM DECISION AND ORDER - 2**

repayment of the Note, Mr. and Mrs. Cordero executed a Deed of Trust on March 9, 2006, encumbering the Property for the benefit of America's Wholesale Lender. The Deed of Trust was recorded in the records of Ada County on March 14, 2006, as Instrument Number 106039042.  The Deed of Trust designates MERS as the beneficiary, as nominee on behalf of the original Lender and its successors and assigns. Further, the Deed of Trust expressly provides MERS with the authority to exercise all of the Lender's, and its successors and assigns, rights under the Deed of Trust. Fidelity was named as the trustee of the Deed of Trust. The Complaint admits that America's Wholesale Lender is now known as Bank of America.

Cordero admits that in January 2009, she began "missing mortgage payments" and defaulted on the Note. On March 2, 2009, Cordero obtained a Decree of Divorce in the Ada County District Court for the Fourth Judicial District of Idaho, Case No. CV DR 0819730 (the "Divorce Decree"). The Divorce Decree states that the Property is to be awarded to Cordero, "subject to the 1st lien on the property." Additionally, the Divorce Decree states that Cordero is to pay the "1st Mortgage $245,000 to Countrywide Home Loans." On May 1, 2009, ReconTrust, the successor trustee, sent Plaintiff a Notice of Default, which was recorded on May 6, 2009, in the Ada County, Idaho records as Instrument Number 109051491. On May 19, 2009, ReconTrust sent Cordero a Notice of Trustee's Sale notifying her that a foreclosure sale would take place on September 28, 2009. Cordero alleges that on April 30, 2009, she was notified by Bank of America and ReconTrust of the September 28, 2009 foreclosure sale.

**MEMORANDUM DECISION AND ORDER - 3**

The Complaint alleges Bank of America, on June 17, 2009, provided Cordero with a forbearance program, whereby she would pay only 50% of her Loan payments for a six-month period. Cordero made monthly payments under the forbearance program between July and December of 2009. In or about November of 2009 and August of 2010, the Complaint asserts Bank of America offered Cordero two different loan modifications, both of which she rejected. On or about January 25, 2011, Bank of America transferred its interest in the Property to Fannie Mae. The Assignment was recorded on or about January 31, 2011, in the records of Ada County under Instrument Number 584735. On or about April 12, 2011, ReconTrust sent Cordero another notice of sale stating that the Property would be sold on August 12, 2011.

On May 6, 2011, Plaintiff filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Idaho, *In re Cordero*, Case No. 11-01376-TLM. In Plaintiff's bankruptcy schedules, Cordero admits that Bank of America is an undisputed, first position creditor of the Property with a fully secured claim of $245,323.60. (Schedules A, D). Further, Cordero's Statement of Intention indicates she intends to "surrender" the Property to Creditor Bank of America. On August 15, 2011, the Bankruptcy Court granted Cordero a discharge under 11 U.S.C. § 727. On or about October 28, 2011, Plaintiff filed her Complaint in the District Court of the Fourth Judicial District of Idaho, and Defendants removed the matter to this Court on February 29, 2012.

**MEMORANDUM DECISION AND ORDER - 4**

## ANALYSIS

### 1.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

In a more recent case, the United States Supreme Court identified two "working principles" that underlie *Twombly. See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not

**MEMORANDUM DECISION AND ORDER - 5**

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon SmithBarney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The United States Court of Appeals for the Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether she "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc*., 375 F.3d 861, 866 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**2.      Breach of Fiduciary Duty Claims (Counts One and Two)**

Cordero's first cause of action alleges that Fidelity and the Bank Defendants breached their fiduciary duties owed to Cordero by "refusing to cooperate with Plaintiff's efforts" at a loan modification. Cordero alleges that she received advice from the Bank Defendants regarding the loan modification and relied on it, and Defendants' actions created a fiduciary or "quasi-fiduciary" relationship between these parties. Her second cause of action avers that Fidelity or ReconTrust, or both, owed a duty toward Cordero to insure that the "Deed of Trust does not get split from the Note and . . . securitized," and that the "alleged trustee(s) breached this duty by continuing the sale when Plaintiff was still in the modification process." Cordero further alleges that all Defendants breached their fiduciary duties by failing to enjoin the trustee's sale. Defendants move to dismiss Cordero's claim for breach of fiduciary duty on the basis that no fiduciary relationship exists between Plaintiff and any Defendant. The Court agrees.

"[T]o establish a claim for breach of fiduciary duty, a plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694, 699 (2009) (citation and marks omitted); *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–881 (9th Cir.2007) (applying Nevada law).

First, with respect to ReconTrust, there is no duty under the Idaho Trust Deeds Act or the Deed of Trust for the trustee to stop a foreclosure upon request of a borrower who is attempting to obtain a loan modification. *Sykes v. Mrtg. Electronic Reg. Sys., Inc.*, No. 1:11–cv–377–BLW, 2012 WL 914922 *5 (D. Idaho Mar. 15, 2012);[5] *see also Gaitan v. Mrtg. Electronic Reg. Sys.*, 2009 WL 3244729, at * 12 (C.D.Cal. Oct.5, 2009) (finding that "[a] foreclosure trustee has no fiduciary duty to the borrower, since a trustee in a non-judicial foreclosure is 'not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary.'"). Cordero's claim for breach of fiduciary duty against ReconTrust fails, therefore, to state a claim upon which relief may be granted.

As to Cordero's remaining fiduciary duty claims against Fidelity and the Bank Defendants, Cordero has not established the existence of a fiduciary relationship. It is generally true that "[a] fiduciary relationship does not depend upon some technical relation created by or defined in law, [and] exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest in one reposing the confidence." *Jones v. Runft, Leroy, Coffin & Mathews, Chtd.*, 873 P.2d 861, 868 (Idaho 1994) (quoting *Stearns*

---

[5] An identical claim as that asserted by Cordero here was asserted, and rejected, in *Sykes*.

*v. Williams*, 240 P.2d 833, 840–41(Idaho 1952)). However, "[t]he facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party." *High Valley Concrete, LLC v. Sargent*, 234 P.3d 747, 752 (Idaho 2010) (citing *Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 853 (1991)).

A review of Cordero's Complaint reveals that she makes no allegations supporting a foundation to believe that the Bank Defendants were acting in Cordero's interests and not on their own behalf, or that of the lender or the loan servicer. Moreover, the Complaint contains no factual allegations demonstrating anything beyond a conventional borrower-lender relationship. As such, Cordero fails to allege any facts supporting more than an arms-length, commercial relationship between a borrower and the servicing entity or lender for the loan in which no fiduciary obligations arise. *See Wade Baker & Sons Farms v. Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 42 P.3d 715, 721 (Idaho Ct. App. 2002) ("no fiduciary duty ordinarily arises between parties to an arm's length business transaction"). *See also Headwaters Const. Co. v. National City Mortg. Co.*, 720 F.Supp.2d 1182, 1192 (D. Idaho, 2010) ("[I]t cannot be said that a lender owes a duty of care to a borrower/third party when its involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.").

As to Fidelity, it was not the trustee at the time of foreclosure, and therefore did not owe Cordero any duty related to the foreclosure proceedings. Moreover, Cordero

**MEMORANDUM DECISION AND ORDER - 9**

alleges no facts that Fidelity owed or breached any duty prior to ReconTrust's appointment as successor trustee.

The Court finds that Cordero's allegations specific to her breach of fiduciary duty claims are not supported by a recognized duty that may be extended to and breached by either Fidelity or the Bank Defendants. Absent such a duty, the Defendants' motions to dismiss as to Count One and Count Two will be granted.

**3.    Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA") (Count Three and Five)**

Cordero's third cause of action alleges violation of TILA and RESPA against Fidelity and the Bank Defendants. She claims she "did not receive documents and disclosures from [The Defendants] as required under the Truth in Lending Act (TILA), [and] the RESPA Standards," and is therefore entitled to damages or to rescind the transaction. The Complaint states that, because the alleged "TILA violations are defensive in nature to enjoin foreclosure, no statute of limitations exist." Defendants contend that the statute of limitations has run, barring Cordero's claims.

The Court finds that the applicable statute of limitations bars Cordero's TILA and RESPA claims. First, under TILA, there are two TILA statute of limitations periods. The statute of limitations for a damages claim under TILA is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Shaw v. Lehman Bros. Bank, FSB*, 2009 WL 790166, at *4 (D. Idaho 2009). A claim for rescission is limited to a three-year statute of repose. 15 U.S.C. § 1635. *McOmie-Gray v. Bank of America Home Loans*, 667 F.3d 1325, 1328 (9th Cir. 2012).Time begins to run when the plaintiff enters into the loan

**MEMORANDUM DECISION AND ORDER - 10**

agreement. S*ee King v. Cal*., 784 F.2d 910, 915 (9th Cir.1986); *Shaw*, 2009 WL 790166, at *4. To the extent that Cordero's claim refers to origination documents under § 2607 of RESPA, a claim must be brought "within one year of the date the loan is signed, and thus closes." 12 U.S.C. § 2614; *Chace v. M & T Mortg. Corp*., 2010 WL 1816161, at *2 (D. Idaho, May 5, 2010).

Cordero's loan was executed on January 25, 2007. Her Complaint was not filed, however, until October 28, 2011, more three years beyond the one-year limitations period, and one and a half years beyond the three year rescission period. Therefore, any RESPA claim or claim for damages under TILA is time barred.

Further, Cordero's claim asserted in her Complaint is affirmative in nature, not defensive. Although TILA provides that a claim for recoupment may be raised as a "defense" in "an action to collect a debt" without respect to the statute of limitations, 15 U .S.C. § 1640(e), a nonjudicial foreclosure is not "an action to collect a debt" within the meaning of Section 1640(e). *Thomas v. Wells Fargo Bank, N.A.*, 2010 WL 3401060 *2 (D. Ariz. Aug. 26, 2010).  The Complaint fails to allege that the Defendants took any judicial action to collect a debt, instead alleging only that the Bank Defendants sought nonjudicial foreclosure of the deed of trust. Therefore, the statute of limitations in TILA applies, and Cordero's claims are time barred.

The Complaint's fifth claim alleges that the Bank Defendants violated RESPA. Specifically, Cordero alleges that, "under RESPA, a written inquiry triggers obligations upon a servicer of a loan, [and] Fannie Mae and Bank of America failed to acknowledge that Plaintiff had relayed all required documents to Bank of America for proper

**MEMORANDUM DECISION AND ORDER - 11**

modification process." RESPA requires that mortgage lenders provide borrowers with a standard disclosure form at or prior to the "settlement." 12 U.S.C. § 2603(b). This form must "itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement...." 12 U.S.C. § 2603(a). RESPA also requires that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days ... unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). When a loan servicer receives a qualified written request, it must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of: (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable. *See* 12 U.S.C. § 2605(e)(2).  Thus, RESPA does grant a private right of action relating to "Qualified Written Requests" made to servicers of loans.

Cordero has not, however, alleged that she made a Qualified Written Requests under RESPA. Rather, she alleges that Defendants "failed to acknowledge receipt" of documents. This allegation does not constitute a claim under RESPA. Nor does Cordero describe in her complaint that she provided any statement describing a problem with her account. Further, Cordero fails to allege or otherwise indicate in what way any response by the Bank Defendants failed to comply with RESPA. The Complaint's allegations related to Cordero's RESPA claim are insufficient to satisfy the pleading standards of Rule 8, and will therefore be dismissed.

**MEMORANDUM DECISION AND ORDER - 12**

4.      **Deed of Trust Act (Count Four)**

Cordero alleges in her fourth cause of action, as well as embedded in other causes of action, that the Bank Defendants violated the Idaho Deed of Trust Act by naming MERS as the beneficiary of the deed of trust, resulting in the "unlawful splitting" of the deed of trust from the note, and leaving no party with "standing to foreclose."

A.      *Standing*

Standing arguments are no longer viable in this District. The Idaho Supreme Court in *Trotter v. Bank of New York Mellon* rejected a similar standing argument, holding that "a trustee may initiate nonjudicial foreclosure proceedings on a deed of trust without first proving ownership of the underlying note...." 275 P.3d 857, 861 (Idaho 2012). *Trotter* explained that the foreclosure process under the Deed of Trust Act is not a judicial proceeding, and therefore there is no "standing" requirement under the Act. *Trotter*, 272 P.3d at 862. This Court, in conformance with the Idaho Supreme Court's interpretation of Idaho law, likewise has rejected similar standing arguments that bank defendants lack the ability to foreclose because they lack standing or must "prove" ownership of the original note. *See Cherian v. Countrywide Home Loans, Inc. et. al.*, No. 1:12-cv-00110-BLW, 2012 WL 2865979 *3 (D. Idaho July 11, 2012).

B.      *Split the Note*

Cordero generally avers that the interests of the Note and the Deed of Trust were severed because the note was securitized and sold, and "removed from the State of Idaho." She appears to take issue specifically with MERS's role in the securitization process.

**MEMORANDUM DECISION AND ORDER - 13**

In *Cervantes v. Countrywide Home Loans, Inc*., the Court of Appeals for the Ninth Circuit, explaining that MERS is an electronic database that tracks the transfers of the beneficial interest in home loans, held that use of the MERS system does not eliminate a party's right to foreclose—even accepting the premise that use of MERS splits the note from the deed. 656 F.3d 1034, 1044 (9th Cir. 2011). Applying Ninth Circuit law, this Court finds that any alleged splitting of the note from the deed does not preclude the proper Defendant in this case, or any other proper party, from foreclosing on Cordero's Deed of Trust. *Cherian*, 2012 WL 2865979 at *4.

Further, the Deed of Trust indicates MERS is acting as the nominee, or agent, of the Lender, which as explained above is what Cordero expressly agreed to. This Court is unaware of any binding authority that MERS's authority to act as an agent on the Lender's behalf is invalid. *See Hofhines v. BAC Home Loans Servicing, L.P.*, 2012 WL 3440458 *7 (D. Idaho June 1, 2012) (finding no split when the Deed of Trust explicitly states that MERS is acting as nominee for the lender, and citing *Cervantes*, 656 F.3d at 1042).

## C.   *MERS as Beneficiary*

Cordero complains also that MERS is not a proper beneficiary under Idaho Code § 45-1502, and therefore could not assign any interest it had in the Deed of Trust. This position has been routinely rejected by the courts, including this Court. *See, e.g., Hobson v. Wells Fargo Bank, N.A.*, 2012 WL 505917, *5 (D. Idaho Feb. 15, 2012). In *Hobson*, relying in part on the Idaho Supreme Court decision in *Trotter*, this Court concluded that MERS had the authority to assign its nominal beneficial interest in the deed of trust to the

**MEMORANDUM DECISION AND ORDER - 14**

foreclosing bank. *Id*. In accordance with these decisions, the Court likewise concludes here that MERS had the authority to assign its nominal beneficial interest in the Deed of Trust.

### D.   *Securitization*

Although not pled as a separate cause of action, replete throughout Cordero's Complaint are allegations that the securitization of the Note somehow rendered the Bank Defendants without standing or authority to foreclose. She claims that the securitization of the Note caused "the note to be null and void, and leaving the Defendants without standing to foreclose and sell the Plaintiff's residence."

"Several courts have rejected various theories that securitization of a loan somehow diminishes the underlying power of sale that can be exercised upon a trustor's breach." *Washburn v. Bank of America, N.A.*, Case No. 1:11–cv–00193–EJL–CWD, 2011 WL 7053617, *4–5 (D. Idaho Oct. 21, 2011) (internal quotation marks omitted) (citing cases). Nothing in Cordero's Complaint persuades this Court to deviate from these decisions. Securitization of the loan does not discharge Cordero's clear contractual obligation to repay the loan. *Cherian*, 2012 WL 2865979 at *3.

### 5.   Idaho Consumer Protection Act (Count Six)

Cordero alleges that several acts committed by Defendants constitute violations of the Idaho Consumer Protection Act, specifically 1) splitting the note; 2) appointing MERS as the beneficiary; 3) Defendants' lack of standing to foreclose; and 4) Defendants' violation of Cordero's "right to maintain a high credit score" because

Defendants informed her she had to be in default before commencing a loan modification.

Idaho Code § 48-601 through § 48-619 comprises the Idaho Deceptive Trade Practices Act. Under these sections, recovery is permitted only for specific actions that are deemed to be unfair or deceptive. *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010); *See also* Idaho Code § 48-603(E). The Act enumerates nineteen prohibited practices. Idaho Code § 48-603(1)-(19).[6] To be actionable, a defendant's conduct must

---

[6] Those nineteen prohibited acts are as follows:

(1) Passing off goods or services as those of another;

(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) Using deceptive representations or designations of geographic origin in connection with goods or services;

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;

(6) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) Disparaging the goods, services, or business of another by false or misleading representation of fact;

(9) Advertising goods or services with intent not to sell them as advertised;

(10) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(12) Obtaining the signature of the buyer to a contract when it contains blank spaces to be filled in after it has been signed;

(13) Failing to deliver to the consumer at the time of the consumer's signature a legible copy of the contract or of any other document which the seller or lender has required or requested the buyer to sign, and which he has signed, during or after the contract negotiation;

(14) Making false or misleading statements of fact concerning the age, extent of use, or mileage of any goods;

(15) Promising or offering to pay, credit or allow to any buyer or lessee, any compensation or reward in consideration of his giving to the seller or lessor the names of prospective purchasers or lessees, or otherwise aiding the seller or lessor in making a sale or lease to another person, if the earning of the rebate, discount or other value is contingent upon the occurrence of an event subsequent to the time the buyer or lessee agrees to buy or lease;

(16) Representing that services, replacements or repairs are needed if they are not needed, or providing services, replacements or repairs that are not needed;

(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer;

(18) Engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C, Idaho Code, provided, however, that the provisions of this subsection shall not apply to a regulated lender as that term is defined in subsection (37) of section 28-41-301, Idaho Code;

**MEMORANDUM DECISION AND ORDER - 16**

fall within one of the statute's nineteen subsections. *State v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 433-34 (Idaho 2005). Further, the Idaho Supreme Court has found that only debts arising from the sale of goods and services are subject to the Trade Practices Act. *In re Western Acceptance Corp., Inc.*, 788 P.2d 214, 216 (Idaho 1990) ("Debts that do not arise out of the sale of goods and services subject to the provisions of the Act are not covered.").

Other than her broad, sweeping allegations condemning the mortgage backed securities market, Cordero has not identified what conduct attributable to any specific Defendant violated the Deceptive Trade Practices Act, let alone any specific provision of the Act such conduct violated. Moreover, the Complaint involves a secured transaction, not a debt that arose out of the sale of goods or services. Therefore, Defendants' motions to dismiss the consumer protection claims will be granted, as Cordero has not stated a claim under the Idaho Deceptive Trade Practices Act.

## 6.     Intentional Infliction of Emotional Distress (Count Seven)

Cordero's Seventh Cause of Action alleges intentional infliction of emotional distress related to the Bank Defendants' "poor treatment" of her, and their "callous attitude and clear unwillingness to work with Plaintiff."

"To prevail on a claim for intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional

---

(19) Taking advantage of a disaster or emergency declared by the governor under chapter 10, title 46, Idaho Code, or the president of the United States . . .

**MEMORANDUM DECISION AND ORDER - 17**

distress; and (4) the emotional distress must be severe." *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 396 (Idaho 2010) (internal citations omitted). "To be actionable, the conduct must be so extreme as to 'arouse an average member of the community to resentment against the defendant,' and 'must be more than unreasonable, unkind, or unfair.' " *Id.* at 397 (citing 86 CJ.S. Torts § 74 (2009) (citations omitted)).

The Court concludes that Cordero's allegations do not rise to the level of outrageous conduct required to state a claim upon which relief may be granted on this cause of action. In view of the fact that Cordero has made no claim that she did not owe the mortgage debt, or that it was not in default, the Court cannot find the refusal to stop the foreclosure process as "outrageous." Nor are Cordero's claims that she was "treated poorly" and subject to a "callous attitude" sufficient to constitute conduct or actions that rise to a level supporting a claim for intentional infliction of emotional distress. *See id*.

Accordingly, Cordero fails to state a claim upon which relief may be granted for intentional infliction of emotional distress.

## 7.    Negligent Infliction of Emotional Distress (Count Eight)

Cordero's eighth cause of action for negligent infliction of emotional distress also is based on the Bank Defendants alleged "poor treatment" of her, and their failure to take reasonable care to avoid causing her emotional distress and anxiety. The Bank Defendants assert that the Complaint fails to allege any wrongful conduct, and no duty arose in the context of an arms-length transaction between a lender and borrower.

To state a claim for negligent infliction of emotional distress, Cordero must allege facts supporting "(1) a duty recognized by law requiring the defendant to conform to a

certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the conduct and the plaintiff's injury; and (4) actual loss or damage." *Johnson v. McPhee*, 210 P.3d 563 (Idaho Ct. App.2009) (citing *Nation v. State Dept. of Correction*, 158 P.3d 953, 965 (Idaho 2007)). Cordero also must allege "some physical manifestation of the [her] emotional injury." *Id.* (citations omitted).

It is well established in Idaho that "[n]o liability exists under the law of torts unless the person from whom relief is sought owed a duty to the allegedly injured party." *Baccus v. Ameripride Serv., Inc*. 179 P.3d 309, 312 (Idaho 2008) (citing *Vickers v. Hanover Constr. Co., Inc.*, 875 P.2d 929, 932 (1994)). Although every person in our society has the duty to use reasonable care to avoid injury to another person that is "reasonably anticipated or foreseen," absent a special relationship, there is generally no duty to act affirmatively to assist or protect someone. *Id.* at 312–13. However, if one voluntarily assumes such a duty, he or she must carry it out in a non-negligent manner. *Id.* at 313. In addition, one cannot maintain a tort claim for violation of a duty which is created by contract. *Id.* (citing *Steiner Corp. v. American Dist. Telegraph*, 683 P.2d 435, 438 (Idaho 1984)). To allege a tort claim, the duty must "be imposed by law independent of that arising out of contract." *Id.*

The Bank Defendants owe no duty that would support a claim of negligence based on the foreclosure actions. Any duty relating to the foreclosure arises from the parties' contractual agreements—the Note and the Deed of Trust. Cordero's allegations with respect to the Bank Defendants' actions in instituting foreclosure proceedings fail, therefore, to state a claim for negligence.

**MEMORANDUM DECISION AND ORDER - 19**

Nor do the Note and the Deed of Trust impose any duty upon the Bank Defendants to work out a loan modification for Plaintiffs in the event of a default. Cordero's complaint alleges, vaguely, that the Bank Defendants' conduct during the loan modification process forms the basis for Cordero's allegations of poor treatment. However, Cordero's negligence allegations as pled are not sufficient to state a claim upon which relief may be granted. *Burton v. Countrywide Bank, FSB*, 2012 WL 976151 at *14 (D. Idaho Mar. 1, 2012) (dismissing similar claims of negligence on the basis of "poor treatment" during the loan modification process).

## 8.    Misrepresentation or Fraud (Count Nine)

Cordero's final cause of action claims that the Bank Defendants' actions in failing to inform her that they had the authority to postpone the foreclosure sale and allow her to receive a loan modification, as well as depriving her of any opportunity to submit missing paperwork required, constitutes fraud because it resulted in the "wrongful foreclosure sale" of her house. The Bank Defendants argue that the Complaint identifies no representations made by ReconTrust or any other defendant, and fails to satisfy the particularity requirement of Fed. R. Civ. P. 9(b).

For claims based on fraud or deceit, Fed. R. Civ. P. 9(b) requires particularity in pleading the circumstances of the alleged fraud. It is well-settled that mere conclusory allegations of fraud are not sufficient for the purposes of Rule 9. Fraud requires (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity; (7) his reliance

on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Faw v. Greenwood*, 613 P.2d 1338 (1980) (quoting *Mitchell v. Siqueiros*, 582 P.2d 1074, 1079 (1978)).

Cordero has not alleged facts supporting any of the nine elements of fraud. Specifically, Cordero has not identified the representations made that were false; specified how the Bank Defendants intended their representations should be relied upon by Cordero; how Cordero relied upon any representation or lack thereof; or any injury that resulted other than that which she was told would occur if she failed to pay her mortgage obligation. Cordero has not set forth with particularity the required elements of her fraud claim. *C.f. Cervantes*, 656 F.3d at 1041 (affirming denial of claim for conspiracy to commit fraud through the MERS system because the allegations did not identify any representation made to the plaintiffs about the MERS system).

9.    **Estoppel**

Last, the Bank Defendants argue that Cordero is judicially estopped from bringing her claims because of her admissions in her bankruptcy schedules. Specifically, the Bank Defendants argue that Cordero did not alert the Bankruptcy Court of her existing pre-petition claim, and she disclosed Bank of America as a secured creditor. Further, her Statement of Intention indicated that she intended to surrender the Property to Bank of America.

Statements made by a debtor in her bankruptcy schedules can constitute admissions under Fed. R. Evid. 801(d)(2). *In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005). Once a bankruptcy case has been closed, a debtor's schedules may not be

amended, unless the case is reopened and amended schedules are filed. Fed. R. Bankr. P. 1009; *In re Goswami*, 304 B.R. 386, 392—93 (9th Cir. BAP 2003).[7] Statements of Intention must be performed within 30 days after the first date set for the meeting of creditors. 11 U.S.C. § 521(a)(2). The statement of intention may be amended by the debtor at any time before the expiration of the periods provided for in 11 U.S.C. § 521(a), all of which are prior to closure of the case.[8]

Judicial estoppel, sometimes known also as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600, 605 (9th Cir. 1996). Judicial estoppel applies even when inconsistent positions are taken in different causes of action. *Rissetto*, 94 F.3d at 600, 605.[9] The rationale for the doctrine is to prevent a litigant from "playing fast and loose with the courts . . . . Because it is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion." *Id.* at 601.

The inconsistent position taken, according to the Bank Defendants, are Cordero's assertions in her bankruptcy schedules that Bank of America has a secured interest in the Property, and Cordero intended to surrender the property to the Bank. Yet now, Cordero

---

[7] An amendment would be barred, however, if the debtor acted in bad faith or if prejudice would result. *In re Arnold*, 252 B.R. 778, 784 (9th Cir. BAP 2000), *superseded by statute on other grounds*, *In re Salgado-Nava*, 473 B.R. 911 (9th Cir. BAP 2012).

[8] Section 521(a) references a 45 day redemption period with respect to personal property. The section requires a debtor to perform her stated intention within the thirty day period after the first date set for the meeting of creditors.

[9] The Idaho Supreme Court cited these same holdings with apparent approval in discussing the equivalent state doctrine in *McKay v. Owens*, 937 P.2d 1222, 1226 (1997). *McKay* also identified the essence of the doctrine: "One may not assert a particular position in order to serve one purpose, then assert a wholly contrary position to serve another." 937 P.2d at 1227, quoting *Owen v. Knop*, 853 S.W.2d 638, 643 (Tex.App.1993).

**MEMORANDUM DECISION AND ORDER - 22**

asserts the Bank Defendants are without the authority to foreclose, and she seeks judgment in her favor. Further, the Bank Defendants contend that Cordero's claim in this matter was a prepetition claim because the events giving rise to this lawsuit occurred prior to Cordero's May 6, 2011 bankruptcy filing.

Under the facts of this case, the Court agrees that it may properly invoke the doctrine of judicial estoppel. The facts and circumstances forming the basis of Cordero's complaint in this matter all occurred prior to Cordero's bankruptcy filing. Yet, she did not list her claims against Defendants as an asset in her bankruptcy schedules. Further, Cordero identified Bank of America as a secured creditor and stated, under oath, that she intended to surrender the Property. Although Cordero could have moved to reopen her bankruptcy case and amended her schedules, *see In re Arnold*, 252 B.R. at 784, she did not do so in this case prior to filing her Complaint against Defendants. Under these circumstances, Cordero cannot invoke the protections of the Bankruptcy Code on the one hand, yet now claim the Bank Defendants are unsecured and without the authority to foreclose in this matter.

**10.    Leave to Amend**

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 946 (9th Cir. 2005). The United States Court of Appeals for the Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."

**MEMORANDUM DECISION AND ORDER - 23**

*Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether she "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

In light of the established case law, and upon review of the Complaint and the claims made, the Court will not grant leave to amend the Compliant. The addition of other facts would not cure the deficiencies in light of the claims made and the representations in Cordero's bankruptcy schedules.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant Fidelity National Title Insurance Co.'s Motion to Dismiss (Dkt. 10) is **GRANTED**.

2) Defendant Fidelity National Title Insurance Co.'s Motion To Take Judicial Notice (Dkt. 9) is **GRANTED**.

3) Defendants Bank of America, N.A., Federal Home Loan Mortgage Corporation, Mortgage Electronic Registration Systems, Inc, Recontrust Company, N.A.'s Motion to Dismiss (Dkt. 11) is **GRANTED**.

Dated: **October 15, 2012**

Honorable Candy W. Dale
United States Magistrate Judge